## STATE *v.* RODNEY HAWKINS.

(*March* 4, 1936.)

RODNEY, J., sitting.

*P. Warren Green*, Attorney-General, for the State.

*H. Albert Young* for the defendant.

Court of General Sessions for New Castle County, January Term, 1936.

RODNEY, J., delivering the opinion of the Court:

A short statement of the principles of *Habeas Corpus* is necessary to fully understand our statutory provisions. At common law there were, at least, five different forms of the *Writ of Habeas Corpus*. Three of these seem to have been used solely in civil causes and grew out of the fact that as civil actions were then begun by *Capias*, resulting in the civil arrest of the defendant, so where bail had not been given, the presence of the body of the defendant constituted the jurisdictional element of an inferior Court. For this reason, if proceedings were contemplated in a Superior Court, the *Writ of Habeas Corpus* was utilized and required the person in whose custody the defendant was, to "have the body" of the defendant in the Superior Court. The three writs just mentioned were—

1. *Habeas Corpus ad respondendum,* which was a writ to bring up the body of the defendant from an inferior Court so that he could be sued in the Superior Court;

2. *Habeas Corpus ad satisfaciendum,* which brought up the body of the, defendant so execution might be had in the Superior Court;

3. *Habeas Corpus ad faciendum et respondendum.* This was usually called *"Habeas Corpus cum causa"* and was the original and usual writ for the removal of civil causes from an inferior to a superior court. 1 *Tidd's Pr.* 404; 2 *Sellon's Pr.* 259-278; 3 *Bl. Comm.* 130. This writ of *Habeas Corpus* for the removal of civil causes was a very usual writ and in common use in Delaware, and is mentioned in the *Act* of 1760 (*Vol.* 1, *Laws of Delaware*, 375) and in 1791 (*Vol.* 2, *Laws of Delaware*, 1012). The Rules of the Supreme Court of Delaware, promulgated in 1790, make a special reference to the writ in connection with the removal of causes to that Court from an inferior Court.

A fourth class of writs of *Habeas Corpus* was *"ad testificandum,"* used to obtain evidence in civil or criminal matters.

The foregoing classes are not to be confused with what may be called the great writ of *Habeas Corpus* or *"Habeas Corpus ad subjiciendum."* This is the writ usually referred to by the simple term *Habeas Corpus* and is and always has been applicable as remedy in all cases of deprivation of personal liberty—civil or criminal. It is a prerogative writ and a writ of right although, according to most authorities, it does not issue as of course, but only for good cause shown. It is said to be a very ancient writ—so old, indeed, that its origin has been lost.

The subservience of English Judges to the wishes of the Crown resulted in such delay and postponements of hearings on Writs of *Habeas Corpus* that the remedy itself had come to be of little benefit. This result brought about the great *Act of* 1679 (31 *Car.* 2, *c.* 2), 5 *Halsbury's Statutes of England, p.* 82, which still remains the basis of statutory regulations of *Habeas Corpus* and has been copied into the laws of many American States.

In Delaware there was no express mention of any *Writ of Habeas Corpus* (other than for the removal of civil causes) until after the adoption of the Federal Constitution. The first Constitution of Delaware in 1776 did not mention it. The second Constitution of 1792 adopted the identical language of the Federal Constitution.

On February 2d, 1793 (*Vol. 2, Laws of Delaware, p.* 1057), the first Delaware Act concerning *Habeas Corpus* was passed. This Act was carried into the *Code of* 1829 and in all material features was continued in the *Code of* 1852, and now appears in the *Code of* 1915. The Act seems precisely similar to the Pennsylvania Act of February 18th, 1785, 2 *Sm. L.* 275, and both so strikingly resemble the English Act of 1679 that their origin cannot be in doubt. There were, however, some slight differences, for the English Act only purported to cover the issuance of *Writs of Habeas Corpus* during the vacation period, while the American Acts covered also the term times of Court. The English Act only covered persons deprived of liberty under criminal process (and this was true until 1816), while the Pennsylvania and Delaware Acts extended the remedy to all causes of restraint of liberty.

One particular feature of the English Act which is almost exactly copied by the Pennsylvania and Delaware Acts is a very material feature in the present case. Each of the three acts excepted from its operation "persons committed * * * on a charge of felony [the species whereof is] plainly and fully set forth in the commitment."

According to the language of the act, then, this statutory *Writ of Habeas Corpus* is not available to any defendant charged with "a felony, the species of which is plainly expressed in the commitment." The reason for the use of the words "treason or felony," as used in the English

Act, may best be understood by a reference to the condition of the English law at the time of the passage of the statute. Regardless of the true origin of the word "felony" in the feudal law from which it came, it seems to have gradually been given a meaning almost synonymous with capital crimes, for as Blackstone says (4 *Comm.* 98)—"I shall for the future consider it (felony) as the generical term including all capital crimes below treason."

The word "felony," then, seems used in the English Act as the generic term for capital offenses other than treason. It seems clear that treason and felony were excepted from the operation of the *Habeas Corpus* Act because, under the English Law then existing, these two classes of offenses had become non-bailable. The common law rule as given by *Blackstone, Vol.* 4, *p.* 296, is—"Wherever bail will answer the same intention" (that of safe custody) "it ought to be taken, as in most of the inferior crimes; but in felonies, and other offenses of a capital nature, no bail can be a security equivalent to the actual custody of the person * * *." See also *Wharton Cr. Pl. & Pr.* (*8th Ed.*) 74.

It is a little difficult to appreciate just why Pennsylvania and Delaware adopted the use of the word "felony" as a class to be excepted from their respective *Acts* of 1785 and 1793, for at that time the word "felony" was not used solely in connection with capital offenses or as synonymous therewith.

In *Williamson v. Lewis,* 39 *Pa.* 9, the Pennsylvania Court construed the words "treason or felony" as synonymous with "unbailable offenses," and held that the *Habeas Corpus Act* of 1785 applied to all bailable criminal offenses. Whether this construction was precisely accurate or necessary, it is not material now to consider.

■ It is entirely clear that the *Writ of Habeas Corpus* was not created by any statute herein cited but existed in full force prior to their enactment. Neither the English Statute of 1679 nor the Pennsylvania Statute of 1785 nor the *Delaware Act of* 1793 conferred any right of *Habeas Corpus* which did not theretofore exist. Those *Acts* simply confirmed and made certain the pre-existing right. The *Acts* were procedural and directory in nature and speeded the operation of the writ in those cases where the statute was applicable and imposed penalties for withholding or delaying the writ. The common law writ exists now, as it always has existed, in any case, as well those without as those within the scope or operation of the *Act* of Assembly.

■ The present defendant stands committed upon a charge of murder. Murder is, or may be, a capital offense, depending on degree. A capital offense under the Delaware Statute (*Section* 3980 of the *Revised Code*) is, in general terms, not bailable and according to the *Constitution* (*Article* 1, § 12) is not bailable "when the proof is positive or the presumption great." *Habeas Corpus* ordinarily is a remedy available only for a restrain of liberty which is, in its nature, illegal.

■ It seems entirely probable that, in the absence of *Section* 3980 of the *Code,* the common law *Writ of Habeas Corpus,* untouched and unaffected by the *Habeas Corpus* statute, would lie to determine the propriety of an admission to bail on a charge of a capital offense—in other words, to determine whether the "proof is positive or the presumption great," as provided by the *Constitution.* *Section* 3980 of the *Code,* however, provides for this specific and exact thing. The statute provides:

"A capital offense shall not be bailable; but the Court of General

Sessions, when in session, or any judge thereof in vacation, may admit to bail a person accused of such offense before indictment found, if, upon full inquiry, it appears that there is good ground to doubt the truth of the accusation."

Of course this *Writ of Habeas Corpus* which has been designated as the most important writ known to the law and which is preserved by express Constitutional provision cannot be displaced by any mere statute in the sense that the *Writ of Habeas Corpus* would not remain available as a remedy whenever needed. See *Cannon v. Stuart*, 3 *Houst.* 223.

■ The *Writ of Habeas Corpus,* however, is an Extraordinary Legal Remedy. It must have had its origin in the fact that in no other adequate manner could its functions or purposes be carried out. It is still an extraordinary remedy, available whenever necessary. The statute presents an adequate, convenient, economical and proper remedy for the present application. While the *Writ of Habeas Corpus* is in no sense displaced or suspended by the statute, yet I think it should not be invoked unless it be shown that recourse to the statute is in some manner inconvenient or improper. In *Exparte Doyle*, 62 *W. Va.* 280, 57 *S. E.* 824, 825, it is said—

"The law seems to be that *habeas corpus* does not lie where other means of liberation, other than appellate process, can be had."

I do not say that the *Writ of Habeas Corpus* does not lie in any proper case, but I do say that ordinary remedies are primarily applicable to ordinary cases, leaving extraordinary remedies to those cases which they alone can meet.

Without definitely determining that *Habeas Corpus* would not lie, I do believe that the proper initial application is under the statute.

The application for a writ of *Habeas Corpus* was withdrawn and a petition under *Section* 3980 of the *Revised Code* was presented, which was granted and the defendant was admitted to bail.