## Commonwealth ex rel. Reeves v. Skelly, Sheriff.

*Criminal law—Search warrant—Information—Records—Public records—Habeas corpus.*

1. Affidavits and a search warrant issued thereon are public records which no one has a right to alter, mutilate or destroy.

2. Where a search warrant based on affidavits is issued against a woman for the unlawful possession of intoxicating liquors, and the officer executing the warrant finds a man in possession of the premises named in the warrant, who admits that he is the husband of the woman named, and that he is the owner of the liquor found on the premises, no one has the right to alter the affidavits and search warrant by substituting the name of the husband for that of the wife; and it is immaterial that such changes were made in the presence of the man arrested, the prosecutor, the executing officer and the justice of the peace.

3. In such case, however, the man arrested will not be discharged in *habeas corpus* proceedings because of the alterations, inasmuch as the evidence is sufficient to establish probable cause against him.

4. In *habeas corpus* proceedings to release one who has been bound over by a magistrate, the court will hear testimony of witnesses and ascertain the fact as to whether or not a crime has been committed for which the defendant should answer; and this is the case whether the *habeas corpus* proceedings were at common law or under the statute.

5. There is authority in Pennsylvania for refusing a writ of *habeas corpus* where it appears that the bail to answer for trial is surrendered for the express purpose of procuring a *habeas corpus*.

Petition for writ of *habeas corpus*. C. P. Venango Co., April T., 1926, No. 63.

*P. A. Wilbert* and *Lee A. McCracken*, for relator.

*D. B. Goodwin*, District Attorney, for the Sheriff.

PARKER, P. J., April 19, 1926.—On April 10, 1926, a petition was presented to this court by the relator, Peter Reeves, asking for a writ of *habeas corpus*. The petition was granted and the relator was immediately produced to the court by the sheriff and admitted to bail for his appearance on Tuesday, April 13, 1926, or at any adjourned time of hearing. On April 13, 1926, the

relator and counsel, and the sheriff represented by the district attorney, appeared in open court and a hearing was had.

Testimony was heard upon the part of the Commonwealth and evidence produced subject to the right of cross-examination by relator's counsel. No witnesses were heard upon the part of the relator. The Commonwealth introduced evidence to show the proceedings pursuant to which the relator had been bound over to the next Court of Quarter Sessions of this county, to be held on April 26, 1926, and also introduced evidence tending to show that there was probable cause to believe that the defendant was guilty of possessing intoxicating liquor contrary to the act of assembly in such cases made and provided.

On Feb. 6, 1926, and at a late hour on that day, which was Saturday, an information was made by Grant Hobaugh, a patrolman in the employ of the City of Oil City, before John M. Mohr, an alderman for the 7th Ward of said city, charging one Mrs. Guyer with possessing, for beverage purposes, intoxicating liquor. At the same time and before the same magistrate a second information or affidavit was filed, charging the same party with the same offence and asking for a search warrant to search premises on the second and third floors of No. 217 Seneca Street, Oil City, Pennsylvania, averring belief that intoxicating liquor was stored or kept unlawfully and that equipment and apparatus used and employed for the purpose of manufacturing intoxicating liquors was unlawfully upon the premises. Thereupon the alderman issued a search warrant, directed to W. M. Fox, a police officer of the City of Oil City, authorizing him to search the second and third floors of the rooming-house at No. 217 Seneca Street, Oil City, Pennsylvania, conducted by Mrs. Guyer, and directing the officer, if he found such things, that he should seize them, to make a return of the warrant, together with the thing or things seized, to the said alderman, and bring before him, the said alderman, the person or persons found in possession or custody of the things so taken. Thereupon the officer proceeded to the premises and made search thereof. A bottle containing approximately a quart of moonshine whiskey was found on the premises by the searcher, and one Peter Reeves, the relator, admitted to the said officer at that time and place that the liquor belonged to him; that he had purchased it for medicine from a person whose name he could not give, but who lived along the line of the railroad upon which the said Reeves was employed. During the search, a constable passing detected someone throwing a quantity of liquid from the premises being searched out into the street, and stated that such liquid was moonshine whiskey. Another officer immediately climbed up the outside of the building, found the vessel from which the liquor had been thrown, and discovered that it still contained a small amount of liquor. The officer, Fox, then immediately took Peter Reeves before the alderman who had issued the search warrant. Before leaving the premises, and after arriving at the office of the alderman, Reeves claimed that he had married Mrs. Guyer the preceding December, and that he, Reeves, was running the rooming-house at the time of the search. There was evidence tending to show that the very floor upon which the search was conducted was at the time being conducted as a rooming and boarding-house.

When it was discovered that Peter Reeves was the husband of Mrs. Guyer, and that he admitted that he was conducting the rooming-house, had the liquor in his possession and made no denial of his guilt, the officer who had made the search suggested to the alderman that the name of Mrs. Guyer be erased from the affidavit for search warrant, from the information and the search warrant, and the name of Peter Reeves inserted in place thereof.

Commonwealth ex rel. Reeves *v.* Skelly, Sheriff.

This appears to have been done in the presence of the officer to whom the search warrant was directed, the officer who had made the affidavits, and the defendant, Reeves, by the alderman personally. The defendant then, as shown by the record, plead "guilty." This is substantiated by the evidence. The defendant was unable to furnish bail at this time and was bound over for his appearance at the next term of Quarter Sessions Court at Franklin, the fourth Monday of April, 1926.

On the following day the defendant, Reeves, with his attorney and the District Attorney of Venango County, appeared before the alderman, when the defendant was permitted to change his plea from "guilty" to "not guilty," and gave bond in the sum of $1500 for a hearing at the office of the alderman on Feb. 11th. On Feb. 11th the defendant appeared with counsel and the district attorney was present. A motion was then made by the district attorney for permission to file an amended information. The motion was granted and an information filed, signed and sworn to by the original prosecutor under date of Feb. 11th. The hearing was then proceeded with, witnesses sworn, testimony taken and decision reserved until Feb. 16th, at which time the alderman bound the defendant in the sum of $1500 bail for his appearance at the next term of Quarter Sessions, April 26, 1926. Bail was furnished.

It is claimed upon the part of the defendant, Reeves, the relator in this case, that all proceedings at the justice's court, after he appeared with the patrolman on the evening of Feb. 6th, were illegal, and that the defendant is entitled to discharge, regardless of whether or not he has been guilty of any crime or misdemeanor, and that in the face of his admission that he was in charge of the premises, and that while the officers were engaged in making the search on the evening of Feb. 6th someone surreptitiously threw from the second story window a large quantity of moonshine whiskey. It would be idle to contend that this evidence did not establish probable cause.

In view of the constitutional and statutory provisions of our law, which give to the Court of Common Pleas of a county certain supervisory jurisdiction over the courts of justices of the peace and aldermen, we deem it pertinent to deal somewhat at length with the character and nature of the proceedings with which we are concerned. The court is given authority by writs of *certiorari, habeas corpus,* etc., to control within certain limits the proceedings before inferior courts.

Certain unusual features have come to light upon the hearing of this cause, and we feel that we would be derelict in our duty if we did not make some comment upon the mistakes that appear to have been made in the prosecution of this cause. When Grant Hobaugh made his informations upon the evening of Feb. 6, 1926, and lodged these with the alderman, the affidavits became judicial records placed in the custody for the time-being of Alderman John M. Mohr. Those affidavits, both the one for the search warrant and the one entitled an information, were made public documents. They were the only justification which the officer making the subsequent search had for his trespass upon the premises of a private citizen. The warrant based upon the affidavit was the only authority of Officer Fox for entering the private premises at No. 217 Seneca Street. These papers, constituting part of the record in the case, were not alone for the protection of the officer making the search, but were also papers indicating to Mrs. Guyer, or the persons in possession of the premises at No. 217 Seneca Street, Oil City, Pennsylvania, that an officer had been granted the extraordinary right to enter the premises of another. After the affidavits had been lodged in the hands of the alderman

and a search warrant issued thereon, the papers in question became judicial records which no one had a right to alter, mutilate or destroy. It appears by evidence on the part of the Commonwealth that, in total disregard of the rights of the public, the executing officer and the defendant, the information, affidavit and search warrant were all mutilated, erased and changed, whereby Peter Reeves's name was substituted for that of Mrs. Guyer. We have no doubt but that the mistake was made by the officers and the magistrate innocently, but, at the same time, it discloses a lack of appreciation upon the part of public officers of the sanctity of a judicial record and the public nature of the documents referred to.

By the fundamental principles of our Government, as well as by the specific authority of our Constitution, a justice of the peace is made a judicial officer. There is a sanctity given to his acts and his records are indisputable for many purposes. If confidence is to be maintained in our judicial proceedings, it is on that very account of the utmost importance that the acts and deeds of magistrates acting judicially should merit the confidence which the law reposes in them.

It is a rule of ordinary accounting that books of original entry shall not be changed or erased without noting upon the margin the circumstance and reason for such erasures. If this is a rule of common practice in simple accounting, it indicates the importance of maintaining judicial records in their original form. In this case the record was deliberately changed without excuse or explanation, and an injustice done to the prosecutor, to the officer who made the search, to the defendant and to the public.

Realizing that aldermen are not learned in the law, and are frequently not experienced men of business affairs, we are inclined to regard the mistakes referred to as mistakes of judgment and not intentional disregard of rights of others. We are satisfied, however, that all of those who were concerned in making the changes were oblivious to the fact that the papers which were altered in this case were public judicial records with a sanctity of their own, and rather regarded them as documents in which individuals were concerned. The fact that the changes were made in the presence of the defendant, the prosecutor, the executing officer and the magistrate is an indication that it was not an intentional disregard of the rights of others.

For the purposes of this case we must, therefore, assume that the information, affidavit for search warrant and search warrant were issued and sworn to as if the name of Mrs. Guyer had been in place of that of Peter Reeves, as appears from an inspection of the present record. When Officer Fox took his search warrant and went upon the premises at No. 217 Seneca Street and found Peter Reeves in possession of intoxicating liquor which he had recently purchased, it was not only the right but the duty of the officer to arrest Reeves and take him before a magistrate. It was also his duty to forthwith make an information against the defendant indicating the charge which was being held against him. There is no doubt about the law authorizing Fox, under the particular circumstances of this case, to arrest Reeves, provided he took him with reasonable promptness before a magistrate for the purpose of making information. The mistake that was made was in altering the papers already made instead of making and swearing to an information against Reeves. If that had been done the proceedings would have been regular.

It appears, however, that the relator, Reeves, appeared with counsel before the justice of the peace on Feb. 11th, and that, before hearing, a new information, improperly called an "amended information," was made against Peter

Reeves, charging him with a violation of the law. It does not appear that he expressly pleaded to this new information, but he proceeded to a hearing thereon, which was equivalent to a plea of "Not guilty." Witnesses were heard and the magistrate bound Reeves over to court.

The proceedings are attacked, and we are asked to discharge the defendant, Reeves, on account of the illegality and irregularities in the proceedings, and that in the face of the fact that there is undisputed evidence showing probable cause to believe him guilty of the crime charged.

It seems to be well established by a long line of cases in this State that it is proper practice for the court in a hearing on a writ of *habeas corpus* to receive evidence from the Commonwealth tending to show that the defendant has committed an offence, and that, if there be evidence sufficient to establish probable cause against the defendant, it is then the duty of the court to remand him to answer the charge. Judge Finletter in 1875 said: "It is not necessary that the specific complaint upon which the defendant has been arrested should be made out. If any violation of the Criminal Code appear, he will be remanded to answer such bills of indictment as the grand jury may present:" Gerdemann v. Com., 11 Phila. 374.

Judge Parsons in 1843 said: "The value of the writ of *habeas corpus* to the citizen, and the importance to the people of this city and county of judges carrying into full effect the act of assembly authorizing this writ, is, to my mind, daily becoming more apparent; and while a judge feels bound to investigate fully the facts in each case brought before him and see if any offence against the law has been committed, and, if convinced that there has been no infraction of it, to discharge at once the accused from arrest; so if, on the hearing, he believes that an offence has been perpetrated by the party charged, which is the subject of indictment, a faithful discharge of duty demands that he should hold him to bail, although no oath was made before the magistrate accusing the defendant with such a crime. All the judges of this court are *ex-officio* magistrates, fully authorized to hold to bail or commit any one charged with a crime. A complaint is made on oath by the testimony of the witness; why should he not then hold the accused to bail? In my opinion, his oath of office demands it, and such is the practice of this court. Our intention is to have no one held to answer or committed on an unfounded charge, nor suffer any one to escape when the proof is clear that he is liable to an indictment for the violation of law:" Com. v. Hickey, 1 Clark, 436.

It seems to be the well-established practice in Pennsylvania, in considering a *habeas corpus* to release one who has been bound over by a magistrate to answer a charge in Quarter Sessions or Oyer and Terminer, for the Court of Common Pleas, upon consideration of the writ of *habeas corpus*, to hear the testimony of witnesses and ascertain the fact as to whether or not a crime has been committed for which the defendant should answer. See Com. ex rel. Curione v. Keeper of County Prison, 26 Dist. R. 511.

The decisions to which we have heretofore referred are decisions by the lower courts, but have become the well-fixed practice in the courts of this State, and they are supported in principle by Com. v. Lecky, 1 Watts, 66; Dows's Case, 18 Pa. 37.

Counsel for the relator have very candidly admitted in their oral argument the cases which we have cited in this opinion, but maintain that the action in the instant case is a proceeding asking for a common law writ of *habeas corpus* and not the writ provided for by statute, and that in an inquiry under the common law writ, the Commonwealth must show not only regularity of proceedings, but also sufficient evidence to warrant holding. Counsel, how-

Commonwealth ex rel. Reeves *v.* Skelly, Sheriff.

ever, has not cited us to a single case in which any such distinction is recognized. It is well settled that the common law writ of *habeas corpus* may still be used in this State. We refer to the case of Williamson *v.* Lewis, 39 Pa. 9, for an elaborate and learned discussion of these writs and when they are appropriate remedies. Suffice it to refer to a short extract from the opinion in that case: "For these two classes of cases only does the *statute* provide; for public restraints on bailable criminal charges and for private restraints on any pretence whatsoever, yet the common law efficacy of the *habeas corpus* goes far beyond these; and the writ takes many forms according to the character of the case to which it is applied."

It might well be said that all of these writs are writs of *habeas corpus*, but are only, as said by Chief Justice Lowrie, a different method of giving efficacy to the writ. In many jurisdictions, and originally in most jurisdictions, hearing upon the writ was confined to a consideration of the regularity of the proceedings. The later and better practice seems to be to go to the merits of the case and hold the defendant if guilty of a crime and discharge him if he is not, regardless of forms, and providing only that the court which undertook to hold him had jurisdiction of the cause and his person. The tendency of the courts to go to the merits of the case and hear the evidence has been a movement in the interest of justice and for the effecting of the original purpose of the writ.

Blackstone (Book 3, page 131) describes the common law writ of *habeas corpus (habeas corpus ad subjiciendum)* as a writ directed to the person detaining another and commanding him to produce the body of the prisoner, with the day and cause of his caption and detention, *ad faciendum, subjiciendum et recipiendum*, to do, submit to and receive whatsoever the judge or court awarding such writ shall consider in that behalf. The very meaning and definition of the original writ indicates that the court is to consider the merits of the case and do justice in the premises, regardless of technicalities. The change in the law by which the courts have come to hear and consider the evidence in support of the charge is an effort to reach truth and justice rather than to stand upon technicalities, and is in the interest of the defendant if innocent.

Assuming the writ in question to be molded as a common law writ and not confined in its effect to the statutory remedies, we are convinced that when it appears that the applicant is guilty of a crime, he should be remanded to the proper court for trial and not released.

There is much authority in Pennsylvania for refusing the writ in a case like this, where it appears that the bail is surrendered for the express purpose of securing a *habeas corpus:* Com. *v.* Fenicle, 6 Dist. R. 789; Com. *v.* Walton, 1 Northamp. Co. Repr. 289; P. & L. Dig. Dec., 13496.

Owing, however, to the irregularities in this proceeding, we have felt it our duty to consider the case broadly on its merits, and full consideration of all the evidence convinces us that we have only one duty to perform, and that is to remand the prisoner.

Now, April 19, 1926, it is ordered and decreed that the relator, Peter Reeves, be remanded to the Court of Quarter Sessions of Venango County, Pennsylvania, for indictment and trial upon a charge of unlawfully possessing intoxicating liquor within the County of Venango on Feb. 6, 1926, such liquor not being then and there possessed in the private dwelling-house for the use of the said Peter Reeves and his *bona fide* guests, as set forth in the act of assembly in such cases made and provided.

From George S. Criswell, Jr., Franklin, Pa.