Commonwealth ex rel. Banky *v.* Ashe, Warden.

OPINION BY KELLER, P. J., December 11, 1940:

Petition for writ of habeas corpus. Rule granted to show cause why writ should not issue. See *Com. v. Curry*, 285 Pa. 289, 298, 132 A. 370.

The record shows that on complaint made before a justice of the peace, of the County of Washington, by a sergeant of the State Police, the relator, Louis Banky, was arrested on March 15, 1930 on a charge of Robbery with an offensive weapon (Section 100 of the Criminal Code of 1860, P. L. 382), along with Fred R. Sarver and Archie Beatty, and after a hearing on said charge was, on March 19, 1930, held without bail for the next term of court, and committed to jail; that on March 28, 1930, the relator signed a paper addressed to the District Attorney of Washington County, as follows:

"Please take notice that I am charged with the commission, within the County of Washington and Commonwealth of Pennsylvania of the crime of Robbery, that I hereby enter my plea of guilty on said charge, waive the right to have my case heard by the Grand

Jury and consent to the finding of a true bill on said charge; that I hereby request you to cause a bill of indictment to be drawn against me on said charge, my plea of guilty to be entered thereon, and me to be brought before the Court for sentence on said charge on my said plea of guilty. Pursuant to the provisions of the Act of Assembly approved April 15, 1907, P. L. 62.

"Witness:

D. W. Creigh            (signed) Louis Banky."

Washington, Pennsylvania
  Mar. 28, 1930"

Pursuant to said request—and like requests from his co-defendants—the district attorney prepared a bill of indictment to No. 201 May Sessions 1930 of the court of quarter sessions charging Fred R. Sarver, Archie Beatty and Louis Banky jointly with the crime of Robbery, while armed with offensive weapons, in accordance with said complaint, but by an oversight, or a mistake in practice, he neglected to sign it.

At a session of court held before the Honorable HOWARD W. HUGHES on April 7, 1930, the 'indictment' so prepared was presented, and, by endorsement thereon signed by the Judge and attested by the clerk, was ordered certified into the court of oyer and terminer, there to be heard and determined in due course of law, and was enrolled to No. 3 February Term 1930 in said court of oyer and terminer. Pursuant to the above written request by the relator a plea of guilty was endorsed on said 'indictment' by the district attorney on behalf of the relator, and a like plea entered on behalf of his co-defendants. All of said defendants were then arraigned in said court of oyer and terminer before Judge HUGHES for sentence on their pleas of guilty.

It further appears, by a record of the proceedings of said session of court, taken in shorthand and transcribed by the official stenographer, and approved and

directed to be filed by the Judge, that a statement made by the said relator admitting said robbery, while armed with an offensive weapon, and giving the details thereof, was read to the Court in the presence and hearing of the relator by an assistant district attorney whereupon the Court said to Louis Banky, this relator: "What does Banky have to say concerning this case? Is there anything you want to say to the Court?" To which Banky replied, "No sir. I have nothing to say."

At the conclusion of said hearing the Court pronounced the following sentence on Banky:

"Louis Banky, the sentence of the Court is that you pay the costs, a fine of $1 and undergo imprisonment in the Western Penitentiary for a period not to exceed seventeen years nor less than eight and a half years."

The docket entry to said No. 3 February Term 1930, oyer and terminer, shows the following entry:

"And now April 7, 1930, the defendants Fred R. Sarver, Archie Beatty and Louis Banky, being arraigned in open court plead guilty as indicted and were by the Court, Hon. HOWARD W. HUGHES, Judge, sentenced as follows: ...... Louis Banky, pay costs, a fine of $1 and imprisonment in Western Penitentiary for a period of not more than 17 years nor less than 8 1/2 years." He was accordingly committed. On May 18, 1933 he was transferred to the Rockview branch of the Western Penitentiary located in Centre County and escaped therefrom on September 14, 1933.

He was captured on September 15, 1933 and lodged in the Centre County jail to await trial for the escape from Rockview.

On October 8, 1933, while in said Centre County jail awaiting trial, he attempted to break and escape from said jail.

On November 13, 1933 he was convicted in the Court of Quarter Sessions of Centre County of breaking and escaping from the penitentiary (No. 21 November Sessions 1933) and sentenced to imprisonment in said

penitentiary for a term of not less than eight and one-half years nor more than seventeen years to be computed from the expiration of his original sentence in Washington County.

On November 16, 1933 he was convicted in the Court of Quarter Sessions of Centre County (No. 48 November Sessions 1933) of attempting to break jail and was sentenced to imprisonment in said penitentiary for a term of not less than one nor more than two years, to be computed from the expiration of the sentence to No. 21 November Sessions 1933.

Relator claims that his sentence on his plea of guilty to the indictment for robbery, etc., in Washington County, was invalid because (1) the 'indictment' was not signed by the district attorney; and (2) his plea of guilty was not signed by him on the 'indictment;' and he cites *Com. ex rel. Mayernick v. Ashe*, 139 Pa. Superior Ct. 421, 12 A. 2d 452, in support thereof. While that case sets forth the practice approved by this Court with reference to proceedings under the Act of April 15, 1907, P. L. 62, it was not intended to lay down a rule that prisoners committed to the penitentiary following a plea under that Act would be entitled to be discharged unless the practice so approved was absolutely and in all respects complied with.

(1) While all indictments, whether presented to a grand jury or prepared pursuant to the Act of 1907, supra, should be signed by the district attorney, thus authenticating them, the defect is amendable *(Com. ex rel. Conrad v. Ashe*, 142 Pa. Superior Ct. 254, 15 A. 2d 926.) In the present cases the endorsement on the 'indictment' signed by Judge HUGHES ordering it to be certified to the court of oyer and terminer, authenticated it sufficiently as an 'indictment' prepared by the district attorney under and pursuant to the Act of April 15, 1907, supra; and we will regard it as amended.

(2) While it is recommended that a plea of guilty entered on an 'indictment,' prepared under the Act of

1907 and not submitted to a grand jury, be signed by the defendant who entered the plea, the omission to have it signed by the defendant is not fatal, if the record contains facts showing that the defendant was informed as to the precise accusation to which he was to plead and, if convicted by his own confession, was informed as to the crime for which he was to be sentenced, and that with such knowledge, he pleaded guilty; and it must be so certain as to enable him to plead it effectually to a subsequent prosecution for the same offense. In the present case the relator signed a separate paper authorizing the district attorney to prepare an 'indictment' under the Act of 1907, waiving its presentation to the grand jury and authorizing the district attorney to enter his plea of guilty thereon; which was done by the following endorsement on the 'indictment:' "April 7, 1930, the defendants, Fred R. Sarver, Archie E. Beatty and Louis Banky, being arraigned, plead guilty ...... Warren S. Burchinal, H, District Attorney." He was arraigned in open court, heard his statement or confession read, which admitted his guilt of the specific offense charged in the 'indictment' and when asked by the Court if he wanted to say anything answered "No sir. I have nothing to say." It would be a travesty on justice to discharge a prisoner committed in such circumstances because of a formal defect or defects in such an 'indictment' and the plea of guilty thereon, where the record shows his arraignment in court, a plea of guilty, with full knowledge of the crime charged, and nothing presented by way of extenuation, and the entry of the plea of guilty was by written authority of the defendant contained in a separate writing. See *Com. ex rel. Krannacher v. Ashe,* 142 Pa. Superior Ct. 162, 15 A. 2d 855.

The Mayernick case was not intended to act as a general jail delivery of penitentiary prisoners because of merely formal defects. It must not be overlooked that in the Mayernick case the 'indictment' (1) was in-

complete, (2) it was not signed by the district attorney, (3) a rubber stamp impressed on the back, intended for a plea, was not filled in or signed, and (4) the information or complaint before the justice of the peace on which it was founded showed on its face that the crime with which he was charged in the 'indictment' was committed in Ohio and therefore was not within the jurisdiction of the court which sentenced him. It was the combination of these errors and irregularities, going beyond merely formal defects and relating to matters of substance, which led us to discharge the relator in that case.

A review of the record in this matter satisfies us that no error of substance such as to warrant or require the relator's discharge was committed.

In addition, we are of opinion that the sentences of imprisonment imposed on him (1) for breaking and escaping from the penitentiary and (2) for attempting to escape from the county jail while awaiting trial, would, in any event, preclude his discharge from confinement at this time. Even if his sentence in Washington County for robbery might have been reversed on appeal, or set aside on habeas corpus, for defects of substance leading up to his plea of guilty, it would, nevertheless, have been effective until so reversed or set aside, and breaking or escaping from the penitentiary while confined under it would be a crime punishable under section 3 of the Criminal Code of 1860, P. L. 382, even though the sentence which he was serving at the time of his escape might afterwards be set aside.

The statute specifically provides that, if a person *charged* with an indictable offense, and arrested and imprisoned in consequence thereof, shall break prison and escape while awaiting trial, or shall break prison without actually escaping, he shall be guilty of a misdemeanor and punished accordingly; and this is the case even though on his subsequent trial he should be

acquitted of the crime for which he was originally arrested and imprisoned. It would follow that if imprisoned in consequence of a conviction and sentence, breaking and escaping from the prison or penitentiary would likewise be a misdemeanor, even though the conviction on which he was originally imprisoned should be subsequently reversed or set aside.

The rule is discharged and the petition is refused.