Commonwealth ex rel. Stevens, Appellant, *v.* Myers.

Submitted November 11, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Rayford G. Stevens,* appellant, in propria persona.

*Ralph B. D'Iorio,* Assistant District Attorney, *Domenic D. Jerome,* First Assistant District Attorney, and *Jacques H. Fox,* District Attorney, for appellee.

OPINION BY MR. JUSTICE ROBERTS, September 29, 1965:

This appeal questions the correctness of the dismissal, without hearing, of a 1963 petition for a writ of habeas corpus contesting a 1954 murder conviction.

After appellant-petitioner Stevens' 1954 jury trial resulted in a verdict of murder in the first degree on a felony-murder charge, the trial judge imposed a sentence of life imprisonment. Stevens, represented by court appointed counsel at trial, took no direct appeal but in 1959 he attacked the conviction by way of a petition for a writ of habeas corpus. That petition was dismissed by the Court of Common Pleas of Delaware County and the dismissal was affirmed by this Court. *Commonwealth ex rel. Stevens v. Myers,* 398 Pa. 23, 156 A. 2d 527 (1959). Certiorari was denied by the Supreme Court of the United States. 363 U.S. 816, 80 S. Ct. 1254 (1960). In 1963 Stevens, again contending that his murder conviction was invalid, once more sought a writ of habeas corpus.[1] The petition was dismissed without hearing and the present appeal follows the dismissal of this second petition.[2]

---

[1] The dismissal of a common law writ of habeas corpus is not a bar to a second petition or a writ, although the prior proceedings may be given some weight. *Sanders v. United States,* 373 U.S. 1, 83 S. Ct. 1068 (1963); *Darr v. Burford,* 339 U.S. 200, 214, 70 S. Ct. 587, 596 (1950); *Waley v. Johnston,* 316 U.S. 101, 105, 62 S. Ct. 964, 966 (1942); *Wong Doo v. United States,* 265 U.S. 239, 240-41, 44 S. Ct. 524, 525 (1924); *Salinger v. Loisel,* 265 U.S. 224, 229-31, 44 S. Ct. 519, 521 (1924).

[2] Since the case involves homicide the appeal comes directly to this Court. Act of May 25, 1951, P. L. 415, §7, 12 P.S. §1907;

## I

At the outset, we feel constrained to discuss an important issue of prematurity which was not raised by the Commonwealth or noticed by the court below.[3]

At the time Stevens was sentenced to life imprisonment on the murder conviction, he was already serving a sentence for an unrelated Pennsylvania robbery. The trial judge explicitly directed that the life sentence commence at the expiration of the ten to twenty year robbery sentence.[4] Since the robbery sentence was to run from April 14, 1954, the expiration date of the minimum was April 14, 1964 and the expiration date of the maximum will be April 14, 1974. Sentences are considered imposed for the maximum term unless parole intervenes. *Commonwealth ex rel., Appellant [sic] v. Ashe,* 320 Pa. 341, 344, 345, 182 Atl. 229, 230-31 (1936) ; *Commonwealth ex rel. Salerno v. Banmiller,* 189 Pa. Superior Ct. 156, 161, 149 A. 2d 501, 504 (1959). Since petitioner has not been paroled, he is presently serving a sentence which he does not challenge.[5] Under such circumstances the rule has been that since the writ of habeas corpus is said to test only the legality of present restraint, the petition must be dismissed as prema-

---

Act of June 24, 1895, P. L. 212, §7.4, as amended by Act of August 14, 1963, P. L. 819, §2, 17 P.S. §191.4 (Supp. 1964).

[3] Nor, apparently, was the point raised or recognized at the time the previous 1959 petition was filed or the appeal entertained in *Commonwealth ex rel. Stevens v. Myers,* 398 Pa. 23, 156 A. 2d 527 (1959). The record in this case is extremely extensive, including a voluminous transcript of the trial and a plethora of other papers relating to the case, and the point was not brought to the attention of the Court on the prior 1959 appeal.

[4] Stevens is imprisoned in the State Correctional Institution at Graterford, Pennsylvania, and a detainer is filed against him on the murder conviction.

[5] Naturally, with a life sentence scheduled to follow the robbery sentence, it is extremely improbable that petitioner will ever be paroled on the robbery sentence.

ture because the propriety of the present confinement is unquestioned. E.g., *Commonwealth ex rel. Lewis v. Ashe,* 335 Pa. 575, 7 A. 2d 296, cert. denied, 308 U.S. 596, 60 S. Ct. 132 (1939) (per curiam) (attacked sentence for escape; held premature because still serving basic sentence).[6] In view of vastly changed circumstances affecting the use of the writ, we believe it appropriate to reconsider this judicial rule governing the function of the writ as it applies to cases of the present nature.[7]

---

[6] Accord, *Commonwealth ex rel. Camara v. Myers,* 201 Pa. Superior Ct. 496, 193 A. 2d 642 (1963) : *Commonwealth ex rel. Woodson v. Myers,* 196 Pa. Superior Ct. 415, 175 A. 2d 894 (1961) (alternative holding), allocatur denied, 196 Pa. Superior Ct. xxx, cert. denied, 370 U.S. 960, 82 S. Ct. 1616 (1962) ; *Commonwealth ex rel. Dixon v. Johnston,* 188 Pa. Superior Ct. 595, 149 A. 2d 473 (1959) ; *Commonwealth ex rel. Gearhart v. Cavell,* 187 Pa. Superior Ct. 464, 144 A. 2d 451 (1958) ; *Commonwealth ex rel. Thompson v. Day,* 182 Pa. Superior Ct. 644, 128 A. 2d 133 (1956) (alternative holding), allocatur denied, 182 Pa. Superior Ct. xxiv, cert. denied, 355 U.S. 843, 78 S. Ct. 65 (1957) ; *Commonwealth ex rel. Dugan v. Day,* 180 Pa. Superior Ct. 643, 122 A. 2d 90 (1956), allocatur denied, 181 Pa. Superior Ct. xxiv; *Commonwealth ex rel. O'Leary v. Ashe,* 152 Pa. Superior Ct. 322, 32 A. 2d 36 (1943), allocatur denied, 152 Pa. Superior Ct. xxiii; *Commonwealth ex rel. Sloan v. Ashe,* 133 Pa. Superior Ct. 32, 1 A. 2d 788 (1938).

In fact, the prematurity concept has never been thoroughly considered in the judicial opinions of this state and has never been fully discussed by this Court.

[7] The concept of prematurity is to be distinguished from that of mootness, a doctrine with which we do not now deal. The question of mootness arises where the petition is questioned as too late, rather than as too early as in the prematurity situation. See generally, e.g., *Jones v. Cunningham,* 371 U.S. 236, 83 S. Ct. 373 (1963) ; *Parker v. Ellis,* 362 U.S. 574, 80 S. Ct. 909 (1960) ; *Eagles v. United States ex rel. Samuels,* 329 U.S. 304, 67 S. Ct. 313 (1946) ; *Pollard v. United States,* 352 U.S. 354, 77 S. Ct. 481 (1957) (28 U.S.C. §2255) ; *Moretti v. Langlois,* 94 R.I. 470, 181 A. 2d 625 (1962) ; *McDorman v. Smyth,* 187 Va. 522, 47 S.E. 2d 441 (1948) ; and cases cited therein. See also *People ex rel. Prosser v. Martin,* 208 Misc. 875, 148 N.Y.S. 2d 472 (1952), aff'd, 281 App. Div. 1008, 121 N.Y.S. 2d 574 (1953), aff'd, 306 N.Y. 710, 117 N.E. 2d 902 (1954). The

The prematurity concept has been enunciated not only in considering the availability of the writ of ha-

question of mootness would be one of first impression in this Court. *Commonwealth ex rel. Ensor v. Cummings*, 416 Pa. 510, 514, 207 A. 2d 230, 232 (1965).

In focusing on the precise issue presented by this case, we might note that the problems of mootness and prematurity—along with several other questions, such as the availability of habeas corpus to a convict who is at large on bail—are sometimes grouped together as aspects of a single concept of "custody" which has been deemed requisite to support relief by habeas corpus. Notwithstanding the historical validity of this conceptual assimilation, the several questions present different considerations for judicial resolution and, for that reason, each deserves analysis on its own footing.

For example, the question whether habeas corpus relief should be extended to a parolee (as in *Jones v. Cunningham*, supra) involves basically the determination whether judicial time and effort should be expended to hear grievances of a paroled convict whose conviction presently prejudices him only by virtue of the restraints incident to parole status, not by the much more serious injury of incarceration. The question whether habeas corpus should be extended to a prisoner attacking one of two concurrent sentences of identical length, in a situation where the sentence attacked does not affect parole on the unchallenged sentence, involves different considerations, principally those relating to the function of courts in rendering advisory opinions. (Compare the factual situation in *Commonwealth ex rel. Toliver v. Ashe*, 336 Pa. 206, 8 A. 2d 541 (1939) (concurrent sentences), cert. denied, 311 U.S. 646, 61 S. Ct. 21 (1940) ; compare also *Commonwealth ex rel. Carter v. Myers*, 205 Pa. Superior Ct. 478, 211 A. 2d 46 (1965)).

The question directly presented by the case now before us, however, is still different. We must answer, on its own footing, the question whether habeas corpus should be made available to a prisoner like Stevens, who will almost inevitably arrive in the future at incarceration under the sentence he attacks. It is the considerations which bear on this question which we must analyze and assess.

A "prematurity" argument substantially different from that in the present case is sometimes made where a petitioner questions the sentence which he is presently serving but he has additional sentences to serve subsequently. Obviously, even if the petitioner prevails in attacking the sentence presently served he will have fur-

beas corpus[8] as used in Pennsylvania, but also as a principle applicable to the federal writ,[9] and the writ

---

ther imprisonment to undergo. See *Commonwealth ex rel. Banky v. Ashe*, 142 Pa. Superior Ct. 396, 16 A. 2d 668 (1940) (convicted validly for escape; attacked basic sentence; asked discharge). Thus the argument has been made that, since the petitioner will not gain immediate and complete freedom, the petition is "premature". See *Commonwealth ex rel. Salerno v. Banmiller*, 189 Pa. Superior Ct. 156, 149 A. 2d 501 (1959) (unquestioned detainers lodged on additional convictions) (alternative holding). Nevertheless, because a convict imprisoned under an invalid sentence is entitled to be relieved of confinement under that particular sentence, the argument has been discredited. E.g., *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W. 2d 753 (1965); see cases cited page 19 infra (undermining theory that complete freedom must be possible before petition can be entertained).

[8] We refer, of course, to the writ of habeas corpus ad subjiciendum, as distinguished from the writs of habeas corpus ad testificandum, habeas corpus ad deliberandum, and habeas corpus ad faciendum et recipiendum. See generally Oaks, Habeas Corpus in the States—1776-1865, 32 U. Chi. L. Rev. 243 n.3 (1965); 11 Standard Pennsylvania Practice, ch. 45, §§5-6 (rev. ed. 1964); *Williamson v. Lewis*, 39 Pa. 9, 27-28 (1861).

[9] E.g., *McNally v. Hill*, 293 U.S. 131, 55 S. Ct. 24 (1934) (the leading prematurity case); *Seay v. Sanford*, 158 F. 2d 281 (5th Cir. 1946); *Pope v. Huff*, 117 F. 2d 779 (D.C. Cir. 1941), cert. denied, 314 U.S. 669, 62 S. Ct. 134 (1941); *Kelly v. Aderhold*, 112 F. 2d 118 (10th Cir. 1940); *Wall v. Hudspeth*, 108 F. 2d 865 (10th Cir. 1940); *Reger v. Hudspeth*, 103 F. 2d 825 (10th Cir.), cert·denied, 308 U.S. 549, 60 S. Ct. 79 (1939); *Colson v. Aderhold*, 73 F. 2d 191 (5th Cir. 1934); *Johnson v. Aderhold*, 73 F. 2d 102 (5th Cir. 1934); *Dodd v. Peak*, 47 F. 2d 430 (D.C. Cir. 1931); *United States ex rel. Gaito v. Rundle*, 213 F. Supp. 508 (E.D. Pa.), cert. denied, 375 U.S. 859, 84 S. Ct. 125 (1963); *United States ex rel. Allen v. United States Marshal*, 106 F. Supp. 165 (N.D. Ill. 1952); *Kennedy v. Sanford*, 76 F. Supp. 736 (N.D. Ga. 1947), aff'd, 166 F. 2d 568 (5th Cir. 1948) (without reference to prematurity), cert. denied, 333 U.S. 864, 68 S. Ct. 737 (1948). Contra, *Martin v. Virginia*, 349 F. 2d 781 (4th Cir. 1965).

The federal Act of June 25, 1948, 62 Stat. 967, as amended by Act of May 24, 1949, §114, 63 Stat. 105, 28 U.S.C. §2255 (1958) [hereafter §2255], has now absorbed, for the most part, the procedures for collateral attacks by federal prisoners. Section 2255 is

as utilized in other states.[10] Most frequently cited as authority for the proposition is *McNally v. Hill*, 293

---

relevant only to attacks in federal courts by federal prisoners. *Parker v. Ellis*, 362 U.S. 574, 575 n.*, 586 n.18, 80 S. Ct. 909, 910 n.*, 916 n.18 (1960). The basic purpose of the section was to minimize the difficulties which were encountered in federal habeas corpus hearings by affording in another and more convenient forum the same rights as existed under federal habeas corpus. *United States v. Hayman*, 342 U.S. 205, 219, 72 S. Ct. 263, 272 (1952). The relief available under §2255 has been described as exactly commensurate with that previously available to federal prisoners in federal habeas corpus. *Sanders v. United States*, 373 U.S. 1, 14, 83 S. Ct. 1068, 1076 (1963); *Hill v. United States*, 368 U.S. 424, 427, 82 S. Ct. 468, 471 (1962).

Thus the federal interpretation of §2255 has been that it may not be used, any more than the federal writ of habeas corpus, to question a sentence not yet being served. *Heflin v. United States*, 358 U.S. 415, 79 S. Ct. 451 (1959) (Court divided 5-4 on the issue); *Daniel v. United States*, 274 F. 2d 768 (D.C. Cir. 1960); *Williams v. United States*, 267 F. 2d 559 (10th Cir. 1959); *Toliver v. United States*, 249 F. 2d 804 (9th Cir. 1957); *United States v. McGann*, 245 F. 2d 670 (2d Cir. 1957); *Duggins v. United States*, 240 F. 2d 479 (6th Cir. 1957).

The pressure to ease the restriction of the prematurity doctrine in federal habeas corpus or its statutory successor, §2255, has been greatly eased by the availability of coram nobis, where applicable, in the federal courts, even though the petitioner is not presently in custody under the federal sentence which he attacks. See *United States v. Morgan*, 346 U.S. 502, 74 S. Ct. 247 (1954) (attack on completed federal sentence affecting present sentence). See also note 23 infra.

And see the discussion in note 15 infra.

[10] E.g., *Phillips v. State*, 40 Ala. App. 698, 122 So. 2d 551 (1960); *Goodman v. State*, 96 Ariz. 139, 393 P. 2d 148 (1964); *Hill v. Bert*, 101 Colo. 243, 72 P. 2d 471 (1937); *Byers v. Cochran*, 143 So. 2d 319 (Fla. 1962) (but see *Dora v. Cochran*, 138 So. 2d 508 (Fla. 1962)); *Mullennix v. Balkcom*, 213 Ga. 490, 99 S.E. 2d 832 (1957); *People ex rel. Martin v. Ragen*, 401 Ill. 419, 82 N.E. 2d 457 (1948), cert. denied, 336 U.S. 968, 69 S. Ct. 939 (1949); *Shoemaker v. Dowd*, 232 Ind. 602, 115 N.E. 2d 443 (1953); *Wright v. Bennett*, 257 Iowa 61, 131 N.W. 2d 455 (1964) (question of first impression); *McQueen v. Crouse*, 192 Kan. 821, 391 P. 2d 68 (1964); *Roberts v. Warden*, 206 Md. 246, 111 A. 2d 597 (1955); *In re Rhyndress*, 317

U.S. 131, 55 S. Ct. 24 (1934). *McNally* undertook to discern the scope of the federal writ as conceived in a federal statute. That statute provided that the federal writ might issue "for the purpose of an inquiry into the cause of restraint . . . ." The statute contained the express requirement that the petitioner be in "custody" of the United States.[11] In interpreting the statute, the Supreme Court of the United States looked to the common law for guidance in delineating the use of the writ. Finding no case prior to enactment of the statute in which the writ was used to determine a question which, even if decided favorably to the petitioner, could not have resulted in the petitioner's immediate release, that Court held that "such use of the writ in the federal courts is without the support of history or of any language in the statutes which would indicate a purpose to enlarge its traditional function." 293 U.S. at 138, 55 S. Ct. at 27. Since *McNally* does no more than define the role of the federal writ, it is, of course, not binding on this Court, although its careful historical discourse is helpful. Most subsequent decisions rely directly on *McNally* or rely on cases which

---

Mich. 21, 26 N.W. 2d 581 (1947) ; *State ex rel. Nelson v. Tahash*, 265 Minn. 330, 121 N.W. 2d 584 (1963) ; *Petition of Amor*, 144 Mont. 300, 395 P. 2d 731 (1964) ; *Ex parte Sheply*, 66 Nev. 33, 202 P. 2d 882 (1949) ; *State v. Hatterer*, 75 N.J. Super. 400, 183 A. 2d 424 (1962) ; *People ex rel. Smith v. Martin*, 264 App. Div. 976, 37 N.Y.S. 2d 236 (1942) ; *Geroski v. Haskins*, 176 Ohio St. 393, 199 N.E. 2d 881 (1964) ; *Ex parte Russell*, 52 Okla. Cr. 136, 3 P. 2d 248 (1931) ; *de Mello v. Langlois*, 94 R.I. 497, 182 A. 2d 116 (1962), cert. denied, 371 U.S. 879, 83 S. Ct. 152 (1962) ; *Bowers v. State*, 241 S.C. 282, 127 S.E. 2d 881 (1962) ; *Ex parte Isom*, 168 Tex. Crim. App. 434, 331 S.W. 2d 753 (1959) ; *Ashley v. Delmore*, 49 Wash. 2d 1, 297 P. 2d 958 (1956), cert. denied, 353 U.S. 986, 77 S. Ct. 1289 (1957). But see note 25 infra.

The contexts in which each of these cases arose are somewhat varied.

[11] Rev. Stat. §753 (1875). The "custody" language survives in 28 U.S.C. §2241 (1958).

can be traced to *McNally*. Subsequent decisions have not paused to re-examine the serious consequences to our system of justice which are attendant upon the rule when blanketly applied in modern times. One federal court of appeals, however, has recently ruled contrary to *McNally* in the belief that the "restraint" requirement has now been relaxed by the Supreme Court.[12]

In earlier times petitions for writs of habeas corpus were a far greater rarity than today, at least in Pennsylvania. Today's frequent resort to the writ can be laid to the burgeoning use of the writ as a means of attacking criminal convictions collaterally. This phenomenal development of the writ as an instrument of postconviction litigation was not foreseen when the common law deemed the writ competent to test only sentences under which the petitioner was then serving.[13]

---

[12] *Martin v. Virginia*, 349 F. 2d 781 (4th Cir. 1965). In *Martin* the petitioner was serving an admittedly valid sentence when he escaped from prison. He was convicted for escape and also for a subsequent larceny. Contending that his convictions for escape and larceny were void, he applied for habeas corpus in the state courts. The petition was dismissed as premature since Martin was still serving the original, and valid, sentence. Thereafter he filed a "motion for declaratory judgment" in the federal court. The district court denied this motion on the ground that a declaratory judgment was not available as a substitute for habeas corpus. On appeal, the United States Court of Appeals for the Fourth Circuit reversed without reaching the declaratory judgment question. It held instead that the motion should be treated as a petition for habeas corpus and that, as such a petition, it was not premature. Noting the holding in *McNally*, the court nevertheless reasoned that subsequent decisions by the Supreme Court of the United States have relaxed the concept of "restraint of liberty" so that it would now encompass an adverse effect on eligibility for parole, such as existed in Martin's situation.

[13] "The writ [the narrow common law writ of habeas corpus which the states incorporated into their jurisprudence] tested only the jurisdiction of the authority imposing restraint, and the concept of jurisdiction for this purpose was extremely limited." (Foot-

That the scope of the writ has developed greatly with the exigencies of the time as a postconviction remedy seems so undeniable that extensive citation and comparison of cases might now well seem a needless exercise.[14] There is no other comprehensive method of collateral attack in Pennsylvania.[15] Thus this growth

note omitted.) Reitz, Federal Habeas Corpus: Postconviction Remedy for State Prisoners, 108 U. Pa. L. Rev. 461, 465-66 (1960), citing 1 Bailey, Habeas Corpus and Special Remedies §§29-33 (1913) ; Church, The Writ of Habeas Corpus §§362-76, especially §368 (2d ed. 1893) ; 4 Encyc. Soc. Sci. 233-36 (1937) ; Notes, The Freedom Writ—The Expanding Use of Federal Habeas Corpus, 61 Harv. L. Rev. 657, 660-62 (1948). See also *Williamson's Case*, 26 Pa. 9 (1855) ; Oaks, Habeas Corpus in the States—1776-1865, 32 U. Chi. L. Rev. 243, 244-45, 262 (1965).

[14] See, e.g., Oaks, Habeas Corpus in the States—1776-1865, 32 U. Chi. L. Rev. 243, 258-63 (1965) ; cases cited note 18 infra.

[15] The writ of error coram nobis is generally available in Pennsylvania, of course. (Compare federal practice, note 9 supra). See generally, e.g., *Commonwealth v. Mathews*, 356 Pa. 100, 51 A. 2d 609 (1947) ; *Commonwealth v. Harris*, 351 Pa. 325, 41 A. 2d 688 (1945) ; *Commonwealth ex rel. Spader v. Myers*, 190 Pa. Superior Ct. 62, 152 A. 2d 787 (1959), affirming 17 Pa. D. & C. 2d 275 (Q.S. Phila. 1959), allocatur denied, 190 Pa. Superior Ct. xxvi, cert. denied, 361 U.S. 938, 80 S. Ct. 380 (1960). See also *Commonwealth v. Kurus*, 371 Pa. 633, 92 A. 2d 196 (1952). It has been said, however, that where the conviction is for murder in the first degree (as in the instant case) there is presently no justification for invoking coram nobis. *Commonwealth v. Mathews*, 356 Pa. 100, 102, 51 A. 2d 609, 610 (1947) ; *Commonwealth v. Harris*, 351 Pa. 325, 342 n.7, 41 A. 2d 688, 697 n.7 (1945) ; see Act of April 22, 1903, P. L. 245, 19 P.S. §861. But aside from this, and even assuming that the facts alleged in the present petition are a proper subject for coram nobis, there is ample reason for refusing to relegate "premature" habeas corpus petitions to the form of coram nobis in this or in cases other than those involving first degree murder. Habeas corpus has traditionally been, and today continues to be, the chief and only comprehensive Pennsylvania postconviction remedy.

In Pennsylvania, the situations in which a writ of coram nobis is deemed "the appropriate legal instrument for the relief sought are extremely limited. . . . As a corollary, writs of coram nobis have been rarely applied for in this State and, still more rarely,

of the writ is not surprising or unwarranted in view of
our continuing efforts to provide a full hearing for
claims of federal constitutional violations[16] and in the
face of the present urgent necessity for a state post-
conviction avenue which will afford an adequate cor-
rective process for hearing and determining alleged vio-
lations of federal constitutional guarantees. See, e.g.,
*Case v. Nebraska,* 381 U.S. 336, 85 S. Ct. 1486 (1965);
Reitz, Federal Habeas Corpus: Postconviction Reme-
dy for State Prisoners, 108 U. Pa. L. Rev. 461, 465-66,
469-70 (1960); Meador, Accommodating State Crimi-
nal Procedure and Federal Postconviction Review, 50
A.B.A.J. 928, 929-30 (1964). But in spite of the in-
contestable postconviction development of the writ of
habeas corpus in Pennsylvania, the prematurity con-
cept has been carried over from historical uses of the
writ, seemingly without regard to the transformed sur-
roundings of the writ when used in postconviction pro-
ceedings.

Even so, the changed quality of some petitions does
not alone account for the dissatisfaction to be found
in the prematurity limitation today. What compounds

---

have they been granted." *Commonwealth v. Kurus,* 371 Pa. 633,
634-35, 92 A. 2d 196, 197 (1952). Unlike the federal practice (see
note 9, supra), there would be no real justification for remitting
"premature" habeas corpus petitions to the coram nobis form in
Pennsylvania. Even aside from the limited availability of coram
nobis, we would only compound confusion. In the first place, venue
in coram nobis is in the convicting court. See *Commonwealth v.
Harris,* 351 Pa. 325, 328-30, 41 A. 2d 688, 690-91 (1945). Venue in
habeas corpus is in the same judicial district (although in the
court of common pleas). Act of May 25, 1951, P. L. 415, §1, 12 P.S.
§1901. Secondly, a petition for postconviction relief, under any
name, by an uncounseled prisoner is, in any event, hospitably re-
ceived if it states a claim for relief in any available form. Thus
nothing would be gained were we to require employment of the
writ of coram nobis in the present circumstances.

16 See *Commonwealth ex rel. Harbold v. Myers,* 417 Pa. 358,
366, 207 A. 2d 805, 809 (1965).

the problem and renders the concept especially detrimental to our ordered system of justice is the increased variety of contentions underlying the current petitions and the large number of convictions which are potentially voidable because of recent developments in the law. Thus the quantity of cases in which the doctrine comes to bear magnifies the difficulties. The number of cases which must be retried because of decisions such as those in *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963), and *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964), are rapidly pyramiding.[17] Moreover, the most cursory study of appellate decisions

---

[17] Even though only cases involving felonious homicide come to this Court as of right on appeal, over a period of less than a year we have ordered retrial in at least ten cases on the basis of *Gideon* and *Jackson. Commonwealth ex rel. Johnson v. Maroney,* 416 Pa. 451, 206 A. 2d 322 (1965) ; *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 204 A. 2d 439 (1964) ; *Commonwealth ex rel. Goodfellow v. Rundle,* 415 Pa. 528, 204 A. 2d 446 (1964) ; *Commonwealth ex rel. Shawley v. Maroney,* 415 Pa. 540, 204 A. 2d 457 (1964) ; *Commonwealth ex rel. Icenhour v. Maroney,* 415 Pa. 541, 204 A. 2d 461 (1964) ; *Commonwealth ex rel. Currier v. Russell,* 415 Pa. 542, 204 A. 2d 458 (1964) ; *Commonwealth ex rel. Young v. Myers,* 415 Pa. 546, 204 A. 2d 457 (1964) ; *Commonwealth ex rel. Slempa v. Rundle,* 415 Pa. 547, 204 A. 2d 458 (1964) ; *Commonwealth ex rel. McCray v. Rundle,* 415 Pa. 65, 202 A. 2d 303 (1964). In addition, we have on numerous occasions remanded for hearings which could potentially require retrials. E.g., *Commonwealth ex rel. Butler v. Rundle,* 416 Pa. 321, 206 A. 2d 283 (1965) ; *Commonwealth ex rel. Linde v. Maroney,* 416 Pa. 331, 206 A. 2d 288 (1965) ; *Commonwealth ex rel. Gaito v. Maroney,* 416 Pa. 199, 204 A. 2d 758 (1964). See also *Commonwealth ex rel. Olecki v. Maroney,* 415 Pa. 543, 204 A. 2d 449 (1964) (remand for further consideration; possible retrial) ; *Commonwealth ex rel. Hardy v. Rundle,* 415 Pa. 544, 204 A. 2d 449 (1964) (same). Of course, in the Superior Court, where all non-homicide cases go by direct appeal, the orders requiring, or potentially requiring, retrials are even more abundant than in this Court. It may be assumed that in the courts of common pleas, where habeas corpus petitions are entertained initially, the orders leading to retrial are still more numerous.

in this Commonwealth over the past few years will readily reveal that increasing areas of possible invalidation of convictions are being recognized on postconviction attacks by way of habeas corpus petitions. The result is a roughly corresponding growth in the number of retrials made necessary.

The prematurity doctrine, when now applied to petitions raising contentions which, if sustained, would require a new trial, imports added dangers into today's changed situation, a situation already fraught with numerous difficulties. By conservative estimate a retrial ordered on a petition for habeas corpus would come no earlier than four years after the original trial if the petition is promptly brought and disposed of in the normal course. Actually, the intervening time is likely to be substantially greater. In the present case, for example, the petition was filed ten years after the original trial. The prematurity concept, if applied, would compound the situation, were a hearing or retrial required, by doubling this time and postponing the hearing or retrial for ten more years, until after 1974.[18] In metropolitan areas and in our more popu-

---

[18] As further example, in the three most recent cases in which we have directed that a writ of habeas corpus issue and an order for retrial be entered, the time intervening between the trial and retrial order was substantial. See *Commonwealth ex rel. O'Lock v. Rundle*, 415 Pa. 515, 204 A. 2d 439 (1964) (20 years); *Commonwealth ex rel. Johnson v. Maroney*, 416 Pa. 451, 206 A. 2d 322 (1965) (9 years); *Commonwealth ex rel. Goodfellow v. Rundle*, 415 Pa. 528, 204 A. 2d 446 (1964) (5 years). In *Commonwealth ex rel. Butler v. Rundle*, 416 Pa. 321, 206 A. 2d 283 (1965), where we remanded for a hearing and possible retrial, the time lapse between the original trial and the hearing order was twenty-five years. In *Commonwealth ex rel. Shaffer v. Cavell*, 419 Pa. 218, 213 A. 2d 380 (1965), where we entered a similar order, the time interval spanned seventeen years.

The prematurity concept actually serves no meaningful purpose in postconviction habeas corpus proceedings such as this. This is especially apparent in light of the fact that the relief, if warranted,

lous counties, even now suffering under already burdensome court dockets, the delay is almost certain to be further increased.

Such delay naturally places a serious and sometimes fatal strain on the Commonwealth's ability to present its case on retrial. Witnesses may have become scattered or disappeared entirely, memories may have faded and other evidence may no longer be accessible. Neither is it to be overlooked that habeas corpus hearings may be rendered progressively more difficult with the passage of time. "It is needless to dwell on the desirability of prompt review and of the difficulties presented by delayed review, difficulties which, among other things, affect both the ability to conduct satisfactorily a comprehensive habeas corpus hearing and the ability to proceed effectively with a new trial if one is required." *Commonwealth ex rel. Harbold v. Myers,* 417 Pa. 358, 367, 207 A. 2d 805, 810 (1965). We are also mindful that, in addition to the heavy disadvantage to the Commonwealth already noted, similar evidentiary considerations indicate that a petitioner's capability to make out a claimed violation of constitutional rights at a habeas corpus hearing, or his ability to defend himself upon retrial, may be prejudiced by lengthy delay.

In short, delay may cause either the Commonwealth or the petitioner to forfeit the hearing or retrial without regard to the merits of the case. Eventually, however, the heaviest detriment comes to the Commonwealth. Upon a retrial, the Commonwealth has the

---

is precisely the same whether or not petitioner is presently serving the sentence he attacks. In both instances we would merely order a retrial and not immediate release. See cases cited note 17 supra. Here this simply means that if petitioner is entitled to relief the retrial is directed now, ten years after the original trial, rather than ten years hence, twenty years after the original trial, with all the difficulties which would accompany passage of those additional years.

traditional burden of proving the elements of its case beyond a reasonable doubt and meeting that burden obviously becomes more onerous ten or twenty years after the commission of the crime. To that extent time is not neutral but, rather, operates in such instances to the advantage of the accused.

. The prematurity concept as applied to petitions collaterally attacking convictions only aggravates these already acute problems. In return for its serious disadvantages, the concept has little to recommend it except the historical lineage of the writ as used in other instances. We do not believe that mere historical considerations, now outdistanced by modern conditions, should be allowed to control the scope of a writ which in this state is clearly adaptable to the exigencies of the times when the writ is used in a new class of cases. See *Commonwealth ex rel. Levine v. Fair,* 394 Pa. 262, 285, 146 A. 2d 834, 846 (1958) ; *Gosline v. Place,* 32 Pa. 520, 524 (1859) ; *Commonwealth v. Gibbons,* 9 Pa. Superior Ct. 527, 533 (1899), aff'd sub nom. *Kelly's Contested Election,* 200 Pa. 430, 50 Atl. 248 (1901). "Old forms will not entirely suit new classes of cases, but must be moulded to suit them." *Gosline v. Place,* 32 Pa. 520, 524 (1859). Although steeped in tradition, the writ is not insensitive to change. Since the writ has developed as a means of collateral, postconviction attack, the prerequisites for permitting its use should be adjusted so that the writ may effectively perform that role. Our present judgment must be based on to-day's needs which the writ is capable of meeting in satisfying the present demands of justice.

Nor do we entertain any doubt of our judicial power to delineate the conditions under which our writ of habeas corpus may be used in challenging criminal convictions.[19] Although there does exist in Pennsylvania

---

[19] Several other states have expanded their postconviction remedies by means of judicial construction of their writs. See *Rice v.*

a substantive statute regarding habeas corpus as applied to some criminal matters, the Act of February 18, 1785,[20] unlike the federal statute in *McNally v.*

*Davis*, 366 S.W. 2d 153 (Ky. 1963) (habeas corpus); *Ex parte Bush*, 166 Tex. Crim. App. 259, 313 S.W. 2d 287 (1958) (habeas corpus); *Huffman v. Alexander*, 197 Ore. 283; 251 P. 2d 87 (1952) (habeas corpus); *Sewell v. Lainson*, 244 Iowa 555, 57 N.W. 2d 556 (1953) (habeas corpus); *In re Horner*, 19 Wash. 2d 51, 141 P. 2d 151 (1943) (habeas corpus). See also *Hunt v. Warden*, 335 F. 2d 936 (4th Cir. 1964) (analyzing changing Maryland judicial interpretation of Maryland postconviction remedy statute). Several states have expanded their writ of coram nobis as a means of providing a satisfactory postconviction remedy. See *People v. Huntley*, 15 N.Y. 2d 72, 204 N.E. 2d 179, 255 N.Y.S. 2d 838 (1965); *State ex rel. McManamon v. Blackford Circuit Court*, 229 Ind. 3, 95 N.E. 2d 556 (1950).

More particularly, see *In re Chapman*, 43 Cal. 2d 385, 273 P. 2d 817 (1954), discussed in note 25 infra.

[20] 2 Sm. L. 275, §1 et seq., 12 P.S. §1871 et seq. The basic section provides: "If any person shall be, or stand committed or detained for any criminal or supposed criminal matter, unless for treason or felony, the species whereof is plainly and fully set forth in the warrant of commitment, in vacation time and out of term, it shall and may be lawful to and for the person so committed or detained, or any one on his or her behalf, to appeal or complain to any judge of the supreme court, or to the president of the court of common pleas for the county within which the person is so committed or detained; and such judge or justice, upon a view of the copy or copies of the warrant or warrants of commitment or detainer, or otherwise, upon oath or affirmation legally made, that such copy or copies were denied to be given by the person or persons in whose custody the prisoner is detained, is hereby authorized and required, upon request made in writing by such prisoner, or any person on his or her behalf, attested and subscribed by two witnesses, who were present at the delivery of the same, to award and grant a habeas corpus, under the seal of the court, whereof he shall then be a judge or a justice, to be directed to the person or persons in whose custody the prisoner is detained, returnable immediate [immediately] before the said judge or justice; and to the intent, and that no officer, sheriff, jailer, keeper or other person, to whom such writ shall be directed, may pretend ignorance of the import thereof, every such writ shall be made in

*Hill,* supra, our statute does not govern use of the writ as a method of collateral attack on judgments of conviction. In so far as criminal matters are concerned, our Act of 1785 extends only to public pretrial restraints on bailable criminal charges. But while it covers such pretrial situations, as long ago as 1861 this Court made it clear that the Act has no application to petitions for writs of habeas corpus which would seek to test a criminal conviction. *Williamson v. Lewis,* 39 Pa. 9 (1861); see *Commonwealth ex rel. Burton v. Baldi,* 147 Pa. Superior Ct. 193, 198, 24 A. 2d 76, 79 (1942). Our common law writ has a much broader scope than that secured by the Act of 1785. *Williamson v. Lewis,* 39 Pa. 9, 29-30, 31 (1861). And so, unlike the statutory federal writ analyzed in *McNally,* the scope of our postconviction writ of habeas corpus is not frozen into statute but, rather, being moldable to the exigencies of the times, is left to the development of the common law.

It is notable that the original rigidity of the prematurity concept has been relaxed in some areas. In the face of the general principle that a petition for habeas corpus attacks only present illegal confinement,[21]

---

this manner, 'By act of assembly, 1785,' and shall be signed by the judge or justice who awards the same." 2 Sm. L. 275, §1, 12 P.S. §1871.

The Act imitates, to a certain extent, the English Habeas Corpus Act of 1679, 31 Car. II, and was enacted to insure that the writ, as it applied to certain classes of cases, was not ignored by the respondent and other officials involved.

There also exists in Pennsylvania the Act of May 25, 1951, P. L. 415, §1 et seq., 12 P.S. §1901 et seq., which relates to habeas corpus. That statute, however, deals only with venue and procedure; it in no way restricts judicial freedom to expand the common law confines of the writ. The 1951 Act involves merely minor regulations of procedure and undertakes no change of the writ's character as developed by—or developable under—the common law.

[21] See cases cited note 6, supra.

and in spite of occasional assertions that a petition for habeas corpus, even if true, is premature if it attacks an excessive sentence which under any legal computation has not yet expired,[22] it seems clear in Pennsylvania that habeas corpus is a proper remedy to test the legality of a sentence being served. E.g., *Commonwealth ex rel. Dermendzin v. Myers*, 397 Pa. 607, 156 A. 2d 804 (1959); *Commonwealth ex rel. [sic] v. Smith*, 324 Pa. 73, 187 Atl. 387 (1936); *Halderman's Petition*, 276 Pa. 1, 119 Atl. 735 (1923). Thus in habeas corpus proceedings, although technically premature, improper or excessive sentences have been corrected even though the present confinement is within the period of a legal sentence, and the petitioner must be remanded to prison to serve remaining time instead of being released immediately. *Commonwealth ex rel. Dermendzin v. Myers*, 397 Pa. 607, 156 A. 2d 804 (1959); *Commonwealth ex rel. Guiramez v. Ashe*, 293 Pa. 18, 141 Atl. 723 (1928); *Commonwealth ex rel. Milk v. Maroney*, 198 Pa. Superior Ct. 442, 181 A. 2d 702 (1962), allocatur denied, 198 Pa. Superior Ct. xxix, cert. denied, 372 U.S. 920, 83 S. Ct. 735 (1963); *Commonwealth ex rel. Cooper v. Banmiller*, 193 Pa. Superior Ct. 524, 165 A. 2d 397 (1960); *Commonwealth ex rel. Flory v. Ashe*, 132 Pa. Superior Ct. 405, 1 A. 2d 685 (1938). See also *Commonwealth ex rel. Micholetti v. Ashe*, 359 Pa. 542, 59 A. 2d 891 (1948). See generally

---

[22] See *Commonwealth ex rel. Grierson v. Ashe*, 353 Pa. 1, 44 A. 2d 239 (1945), cert. denied, 327 U.S. 790, 66 S. Ct. 803 (1946); *Commonwealth ex rel. Stauffer v. Ashe*, 141 Pa. Superior Ct. 407, 15 A. 2d 409 (1940) (per curiam); *Commonwealth ex rel. Padmonsky v. Smith*, 127 Pa. Superior Ct. 24, 191 Atl. 684 (1937) (per curiam). See also *Commonwealth ex rel. Lewis v. Ashe*, 335 Pa. 575, 7 A. 2d 296, cert. denied, 308 U.S. 596, 60 S. Ct. 132 (1939); *Commonwealth ex rel. Lieberman v. Burke*, 158 Pa. Superior Ct. 207, 44 A. 2d 597 (1945).

Notes, Habeas Corpus in Pennsylvania after Conviction, 20 U. Pitt. L. Rev. 652, 653-56 (1959).[23]

Reason accords with necessity and practicality in urging that we make the conditions under which the writ will issue conform with its current scope in cases of the instant sort. The history of the writ, its traditional use, and its recent development all indicate the writ's flexibility as a procedural vehicle for collaterally reaching fundamental defects in the administration of criminal justice. A refusal to permit the employment of the writ in the present circumstances would result in placing central emphasis on the history of the writ rather than upon its suitable employment in maintaining the balance "nice, clear and true between the State and the accused."[24]

Confident of our power to mold the Great Writ to the exigencies of the times, and mindful of present necessities, we conclude that the prematurity concept should be modified in circumstances such as those present here and that the writ of habeas corpus may be sought in postconviction attacks on the validity of a final judgment of conviction even though the petitioner has not yet begun to serve the sentence imposed.[25]

------

[23] In the federal courts it has been decided that §2255 (see note 9 supra) is not available to correct an improper sentence, the execution of which has not yet been begun. *Heflin v. United States*, 358 U.S. 415, 79 S. Ct. 451 (1959). *Heflin*, however, went on to hold that an improper sentence could be corrected immediately under Fed. Rules Cr. Proc. Rule 35, at least where matters dehors the record are not involved.

[24] The language, used in another context, is from *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S. Ct. 437, 444 (1927) (TAFT, C. J.).

[25] In construing its writ of habeas corpus, California seems to have rejected the prematurity argument when the habeas corpus petitioner, instead of asking for immediate release, asks only a declaration that his sentence, yet to be served, is invalid. See *In re Chapman*, 43 Cal. 2d 385, 273 P. 2d 817 (1954). Oregon abandoned the custody requirement generally in its postconviction hearing act. Ore. Rev. Stat. §§138.510, 138.560, 138.570 (1963). Mary-

Satisfied that Stevens' petition is timely, we turn to the merits of the case.

## II

Only one issue on the merits presently deserves extended discussion. Stevens contends that he was deprived of his right of appeal because he was already in prison, a pauper, and unable to proceed on his own behalf without the benefit of counsel. The record before us also contains the important claim that trial counsel refused to take the appeal because of Stevens' lack of funds.

Court appointed counsel ably represented petitioner at trial. He diligently and adequately preserved the issues on the record in the event of an appeal. Furthermore, counsel filed motions for a new trial and in arrest of judgment, although these were ultimately refused by the trial court.[26] Following petitioner's sentence, however, no action was taken to pursue and perfect his right of direct appeal to this Court.[27]

Stevens' right on direct appeal included the right to the assistance of counsel at this critical stage. *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963); *Commonwealth v. Sliva,* 415 Pa. 537, 204 A. 2d 455 (1964). It is no bar that the pertinent events of Stevens' conviction occurred before the decision in *Douglas v. California,* supra. *Douglas* must be applied retroactively. *Smith v. Crouse,* 378 U.S. 584, 84 S. Ct. 1929 (1964) (per curiam), reversing 192 Kan. 171, 386

---

land has construed its postconviction hearing act to permit attack on a sentence not yet being served. *Simon v. Director of Patuxent Institution,* 235 Md. 626, 201 A. 2d 371 (1964). As previously noted (note 12, supra), one federal court of appeals has also rejected the prematurity argument as applied to federal habeas corpus. *Martin v. Virginia,* 349 F. 2d 781 (4th Cir. 1965).

[26] 42 Del. Co. Rep. 271 (Q.S. 1955).

[27] Act of February 15, 1870, P. L. 15, §1, 19 P.S. §1186.

P. 2d 295 (1963); see *Ruark v. Colorado,* 378 U.S. 585, 84 S. Ct. 1935 (1964) (per curiam); *Daegele v. Kansas,* 375 U.S. 1, 84 S. Ct. 89 (1963) (per curiam); *Herrera v. Heinze,* 375 U.S. 26, 84 S. Ct. 90 (1963) (per curiam); *Tabb v. California,* 375 U.S. 27, 84 S. Ct. 90 (1963) (per curiam); *Shockey v. Illinois,* 375 U.S. 22, 84 S. Ct. 83 (1963) (per curiam); *Ausbie v. California,* 375 U.S. 24, 84 S. Ct. 87 (1963) (per curiam).

Naturally, a hearing is not required in every case in which there has not been a timely direct appeal. However, the petition and record before us suggest enough on this issue so that we feel it necessary to remand for a hearing at which time the court should inquire into all the circumstances attendant upon the failure to take a direct appeal in this case.[28] Especially significant in this regard is the allegation that trial counsel refused to take an appeal because of petitioner's lack of funds.[29] Among the questions into which the hearing court should specifically inquire are: whether petitioner was indigent at the conclusion of his trial, whether he was informed of his right to appeal by anyone, whether he independently knew of his right to appeal, whether he desired to appeal, whether he communicated a desire to his trial counsel that he

---

[28] Cf. *Henry v. Mississippi,* 379 U.S. 443, 450, 85 S. Ct. 564, 569 (1965). Nothing that we say in this novel situation is meant to infringe upon the traditional rule that ordinarily pertains in habeas corpus petitions: facts which are not contradicted by the record and which, if proved, would support the issuing of a writ must be alleged with compelling particularity and definiteness to justify a hearing.

On the facts of this case, it would be wise for the hearing court to appoint counsel to represent petitioner at the hearing.

[29] While we express no opinion on the merits of issues raisable on direct appeal, it might be noted that the record in this case shows colorable grounds for appeal. It is therefore clear that a request to appeal would not have been frivolous.

wished to appeal, whether he communicated such a desire to the trial court, and what were the reactions of counsel or the court. This will present a full record. The hearing court shall then determine whether, directly or indirectly, petitioner was denied the assistance of counsel in perfecting his appeal, whether a denial of counsel was a factor in the failure to take an appeal or whether some other reason was involved which amounted to an intelligent and knowing waiver of the right to appeal and the assistance of counsel.[30]

It is best that we do not decide in the abstract exactly what facts must be shown in these regards for a denial of constitutional rights to be proved. Because the question is somewhat novel, that determination is best left to a time and posture when there is a full record. In the event the hearing court determines that there was no denial of rights, it shall enter an order dismissing the petition for habeas corpus. Should the court decide that there was a denial of constitutional rights, it shall then enter an order so finding and shall transfer the record to the court of oyer and terminer so that counsel may be appointed for appeal and an order entered authorizing an appeal to be taken from the judgment of sentence on the murder conviction.[31] The parties have their usual right of appeal from the hearing court's order.

Should it be concluded below that there was a denial of rights in regard to the appeal, we will allow relator, on motion of his appointed counsel, to docket his appeal here just as if timely filed.[32]

---

[30] It might be noted that under our new Rules of Criminal Procedure, effective January 1, 1965, an assignment of counsel is effective until after direct appeal. Pa. R. Crim. P. 318(c), 19 P.S. Appendix (Supp. 1964).

[31] The time for appeal would run from the date of the order of the court of oyer and terminer allowing the appeal.

[32] It should be noted that the dangers of a delayed appeal are, per se, much less than those involved in a delayed retrial. On ap-

## III

We find it unnecessary to engage in extended discussion of further contentions in the habeas corpus petition. Petitioner's allegation that the Commonwealth suppressed evidence is contradicted by the trial record and petitioner's own testimony at trial. We also expressly reject petitioner's contention that his conviction is invalid because, at his trial prior to the Split-Verdict Act of December 1, 1959, P. L. 1621, §1, 18 P.S. §4701, evidence of two prior convictions was introduced. Petitioner's contention is based mainly on the case of *United States ex rel. Scoleri v. Banmiller,* 310 F. 2d 720 (3d Cir. 1962), cert. denied, 374 U.S. 828, 83 S. Ct. 1866 (1963). See also *United States ex rel. Johnson v. Rundle,* 349 F. 2d 416 (3d Cir. 1965), affirming per curiam 243 F. Supp. 695 (E.D. Pa. 1964). The record fails to place the instant case within the ambit of *Scoleri* or *Johnson.* See, e.g., *United States ex rel. Rucker v. Myers,* 311 F. 2d 311 (3d Cir. 1962). See also *Commonwealth ex rel. Walls v. Maroney,* 416 Pa. 290, 205 A. 2d 862 (1965) ; *Commonwealth ex rel. McNeair v. Rundle,* 416 Pa. 301, 206 A. 2d 329 (1965) ; *Commonwealth v. Coyle,* 415 Pa. 379, 387-88, 203 A. 2d 782, 787 (1964).

The order of the Court of Common Pleas of Delaware County is vacated and the record is remanded for proceedings consistent with this opinion.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

Recent decisions of the Supreme Court of the United States which overruled and changed well settled law are the real cause of the flood of habeas corpus petitions which, unlimited and unrestricted by that Court, are unrealistically and unnecessarily swamping State

---

peal, the record is fixed and the questions to be determined are those of law, not fact.

Courts and, we believe, Federal Courts* also. Those decisions have created new and difficult legal and police problems, and have imposed new Constitutional restrictions on the solution of crime and the conviction of criminals.** Especially when retroactively applied by the mandates of the Supreme Court, they seriously endanger the safety and welfare of all law-abiding citizens.

The Supreme Court of the United States has radically changed the writ of habeas corpus, its functions, its use and its boundaries.*** These decisions of the

---

* For example, in *Fay v. Noia*, 372 U.S. 391, Mr. Justice CLARK said in his dissenting Opinion (page 445) : "First, there can be no question but that a rash of new applications from state prisoners will pour into the federal courts, and 98% of them will be frivolous, if history is any guide.*

"* In the 12-year period from 1946 to 1957 the petitioners were successful in 1.4% of the cases."

** In *Douglas v. California*, 372 U.S. 353, Mr. Justice CLARK said in a footnote in his dissenting Opinion (page 358) : "Statistics from the office of the Clerk of this Court reveal that in the 1961 Term only 38 of 1,093 in forma pauperis petitions for certiorari were granted (3.4%). Of 44 in forma pauperis appeals, all but one were summarily dismissed (2.3%)." See also Opinion of Mr. Justice FRANKFURTER in *Brown v. Allen*, 344 U.S. 443, 498; also in *Darr v. Burford*, 339 U.S. 200, 233.

*** For instance, in our case of *Commonwealth v. Garner*, this Court had denied an allocatur from the Superior Court's decision (196 Pa. Superior Ct. 578) which affirmed a decision of the Quarter Sessions Court of Philadelphia County (May Term, 1944, No. 887 and No. 888) denying Garner's petition for a rule to show cause (in effect, a habeas corpus proceeding) why a judgment of sentence entered on a guilty plea June 21, *1944*, should not be vacated. The Supreme Court of the United States in its October Term 1962, Miscellaneous No. 67, vacated the aforesaid judgment of the Supreme Court of Pennsylvania and remanded the case to this Court "for further consideration in light of *Gideon v. Wainwright*, 372 U.S. 335." The Supreme Court made this Order in *1963* even though at the time the petitioner filed his aforesaid rule and petition he had fully served his sentence and *had been released and discharged in 1950.* Garner desired the old Pennsylvania sentence

Supreme Court have necessitated a change by State Courts in our consideration and interpretation of the functions of the writ of habeas corpus and our appropriate procedures. For these reasons and in order to protect society from future false claims by prisoners and other persons who had been convicted of a crime or crimes and who many years thereafter challenge the constitutionality or legality of their convictions or sentences—often when witnesses for the Commonwealth have moved or died, or their recollections of the crime or of what the criminal said or did may have become dimmed—I would grant a hearing on the writ in this exceptional case.

Mr. Justice ROBERTS has written a learned Opinion in which he further extends the writ of habeas corpus to reach every allegedly unlawful detention or restraint or conviction. Although I disagree with this further extension of the writ and with some of the ideas, interpretations, deductions and conclusions of the majority, this case is so unusual that, I repeat, I concur in the result.

————

DISSENTING OPINION BY MR. JUSTICE COHEN:

Throughout the great and long history of the writ of habeas corpus no court has ever held, and many have expressly rejected the proposition, that the writ could issue on behalf of one who was lawfully confined. Here, petitioner seeks to attack the validity of a conviction although he is lawfully confined by reason of a different, unassailed, prior conviction. He has not yet begun to serve the sentence imposed upon the conviction which he attacks. In similar circumstances the Supreme Court of the United States has held that the

————

to be vacated, in order that he might apply to the appropriate Court in New York for a reduction of his sentence for a crime committed in the State of New York, which sentence had been based on his being a recidivist.

petitioner is not entitled to the writ, *McNally v. Hill,* 293 U.S. 131 (1934), *Heflin v. United States,* 358 U.S. 415 (1959), and so have we. *Commonwealth ex rel. Lewis v. Ashe,* 335 Pa. 575, 7 A. 2d 296 (1939). See also *Commonwealth ex rel. Padmonsky v. Smith,* 127 Pa. Superior Ct. 24, 191 Atl. 684 (1937).

The majority sets forth only one reason for changing the rule—that it will facilitate hearings on petitions and retrials (should they be necessary) because the evidence will be fresher. While there is much said in the majority opinion about the novelty of today's circumstances compared to the antiquity of the rule regarding when a petition for habeas corpus is appropriate, there is nothing novel about the majority's reason for change. Staleness of evidence must surely have been as much of a problem when the *Hill* and *Ashe* cases, supra, were decided as it is today.

The only thing that is different today is the increased number of petitions for habeas corpus. While this may increase the number of cases in which staleness of evidence becomes a problem it has another consequence—it greatly increases the case load pressure upon the courts and district attorneys. Why should we now increase that pressure with cases that have heretofore been considered premature? District Attorneys and courts may well find it a mixed blessing to have less time to effectively utilize fresher evidence.

But speculation—and it is only speculation—about the practical effects of throwing out the rule is beside the main point. The majority approaches the issue as though the old rule has no reason. But it does. Courts never should decide issues unless and until they have to—especially constitutional issues. "It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." *Burton v. United States,* 196 U.S. 283, 295 (1905). This important principle of judicial restraint

in the area of constitutional litigation was reiterated by Justices BRANDEIS, STONE, ROBERTS and CARDOZO in *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) and applied by us in *Beauty Hall, Inc. v. State Board of Cosmetology*, 418 Pa. 225, 210 A. 2d 495 (1965). Surely this principle is a good enough reason for the continued vitality of the rule regarding the appropriate time to petition for the writ of habeas corpus. One need only consider the difficult constitutional issues the majority unnecessarily decides.

In my opinion, the majority has perverted the writ of habeas corpus, increased the case load pressure with premature cases, and unnecessarily decided constitutional issues—with no immediate benefit to the lawfully confined petitioner. Nothing said by the majority justifies its action or impels me to abandon our long line of decisions. To do so requires that I ignore Mr. Justice STONE'S penetrating discussion in *McNally v. Hill*, supra. It should suffice to note only the Court's conclusion in *McNally*: "Without restraint of liberty the writ will not issue. . . . Equally, without restraint which is unlawful, the writ may not be used. A sentence which the prisoner has not begun to serve cannot be the cause of restraint which the statute [habeas corpus] makes the subject of inquiry."

I dissent.

Mr. Justice JONES joins in this dissent.